IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02369-MSK-KMT

MADISON SERVICES COMPANY, LLC, n/k/a M Capital Services, LLC, a Delaware corporation,

       Plaintiff/Counter-Defendant,

v.

JOHN GORDON, an individual,

       Defendant/Counter-Claimant.

---

# OPINION AND ORDER GRANTING IN PART
# PARTIAL MOTION TO DISMISS COUNTERCLAIMS

---

**THIS MATTER** comes before the Court on Plaintiff/Counterclaim Defendant Madison Services Company, LLC n/k/a M Capital Services, LLC'S ("Madison") Partial Motion to Dismiss Counterclaims **(#16)**, to which Defendant/Counterclaim Plaintiff John Gordon responded **(#65)**, and Madison replied **(#78)**.[1] Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Material Facts

To understand the counterclaims, it is necessary to recall the factual allegations in

---

[1] Madison's reply included a request for sanctions. Pursuant to local rule, however, a motion for relief shall not be included in a response or reply but must be made in a separate paper. *See* D.C. Colo. L. Civ. R. 7.1C. Accordingly, the Court does not consider Madison's motion for sanctions which was imbedded in its reply.

Madison's complaint.  Construing all allegations most favorably to Mr. Gordon, the Court finds that the Complaint **(#1)** and the Answer/Counterclaim Complaint **(#14)** allege the following facts.

Madison is an investment management firm specializing in real estate, natural resources, and special situations investments.  To effectuate its investment activities, Madison employs the use of various entities, each called an "affiliate" of Madison.  Two of these entities are the Pramerica Fund and the Niche Fund (collectively, the "Investment Funds").  The investment activities of each Fund is managed by a separate entity—the Pramerica Fund is managed by the Pramerica Manager and the Niche Fund is managed by the Niche Manager (collectively, the "Investment Managers").  The Investment Managers receive a percentage of the net income that the Investment Funds generate.  In directing the investments of the Investment Funds, the Managers created a Property Fund, which, in turn was managed by the Property Manager.

Mr. Gordon was initially hired as Madison's controller.  Then he served as an executive vice president between February 2006 to June 2009, when his employment was terminated. During his employment, Madison used a Compliance Manual that set forth the general policies and procedures governing Madison's business and the conduct of Madison's employees.  In the Code of Ethics section, the Manual provided:

> You are also responsible for reporting matters involving violations or potential violations of the Code or applicable legal and regulatory requirements by Madison personnel or which you may become or are aware.  Concern over a potential or apparent violation may be made to your supervisor, the Chief Compliance Officer or Chief Legal Officer.  Anyone who in good faith reports genuinely suspected illegal or unethical behavior will not be subject to retaliation for reporting a concern. Retaliation is a serious violation of this policy and any concern about retaliation should be reported immediately.  Any person found to have retaliated against an Employee for reporting genuinely suspected violations will be subject to appropriate

disciplinary action.[2]

During his employment, Mr. Gordon participated in Madison's Key Employee Investment and Retention Plan (the "Key Plan"), a deferred compensation plan reserved for certain key employees. By its terms, the Key Plan is governed by ERISA. Madison made contributions to Mr. Gordon's account during his employment. Some of these have been paid out to Mr. Gordon, but some remain in the Key Plan.[3] Based on the contributions remaining in the Key Plan together with investments that Mr. Gordon made to a retirement savings account, Mr. Gordon currently is the beneficial owner of approximately $120,000 worth of shares of the Pramerica Fund and approximately $150,000 worth of shares of the Niche Fund.

During his employment with Madison, Mr. Madison was responsible for accounting, preparation of tax returns for Madison, the Investment Funds, and the Investment Managers. In performing his duties, he uncovered what he believed to be improper payments to the Investment Managers. Although not entirely clear from the Counterclaims, it appears that these improper payments were based on three different sets of activities: (1) diversion of investment

---

[2] The full text of this provision was not alleged in the Counterclaim Complaint, but was attached to Mr. Gordon's response brief as an exhibit **(#67-6)**. Generally, when documents outside the complaint are considered on a motion to dismiss, the motion is converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, when the complaint refers to a document and the document is central to the plaintiff's claim, the document may be considered in a motion to dismiss without converting the motion to one for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). This is exactly the case here. The Counterclaim Complaint references the Compliance Manual, in particular the provision regarding reporting employee misconduct, and the statements made in that provision are central to Mr. Gordon's breach of implied employment contract claim. Accordingly, the Court considers this document without converting Madison's motion to a motion for summary judgment.

[3] At issue in this action is whether the contributions that remain in the Key Plan have vested and whether Mr. Gordon has forfeited any claim to them.

opportunities to the Property Fund which resulted in investment of assets of the Pramerica Fund and the Niche Fund into the Property Fund, and therefore improper payment to the managing member of the Property Fund; (2) change in the method by which the Investment Managers calculated the Investment Funds' generated income which inflated their profit percentage; and (3) improper treatment of unrealized appreciation on certain investments as income which inflated the Investment Managers' compensation. Unsurprisingly, the Investment Managers declined to direct the Investment Funds to pursue the Investment Funds' claims against them and their affiliates.

Madison discovered Mr. Gordon's investigation into the improper payments, and directed him to stop his investigation, thwarted his investigation by denying him access to essential documents, and ultimately his employment ended.[4] Mr. Gordon contends that his termination violated the provision in Madison's Compliance Manual encouraging employees to report the misconduct of other employees and stating that employees would not be retaliated against for reporting such misconduct. Upon his separation from Madison, Mr. Gordon sought payment of the contributions in his Key Plan account.

Believing that Mr. Gordon was not entitled to such payment, Madison initiated this action seeking declarations regarding Mr. Gordon's entitlement to benefits under the Key Plan as well as the applicability of the Colorado Wage Act to the Key Plan. Mr. Gordon responded by asserting eight counterclaims: (1) wrongful termination—termination against public policy; (2) breach of employment contract based on a term implied from Madison's Compliance Manual;

---

[4] Mr. Gordon contends that he was terminated, or alternatively, constructively discharged, while Madison contends that Mr. Gordon voluntarily resigned his position.

4

(3) breach of employment contract based on the Key Plan; (4) Colorado Wage Act violations related to the Key Plan; (5) theft; (6) aiding and abetting a breach of fiduciary duty; (7) extreme and outrageous conduct; and (8) civil conspiracy.

## III. Issues Presented

Madison's Partial Motion to Dismiss Counterclaims seeks dismissal of Counterclaims 1 (wrongful termination), 2 (breach of implied term in employment contract), 5 (theft), 6 (aiding and abetting breach of fiduciary duty), 7 (intentional infliction of emotional distress), and 8 (civil conspiracy). As to Counterclaims 5 and 6, Madison argues that Mr. Gordon lacks standing because he does not have a direct ownership interest in the Investment Funds. As to Counterclaims 1, 2, 7, and 8, Madison argues that the Counterclaim Complaint fails to sufficiently allege every element of each claim and, therefore, dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Analysis

### A. Motions to Seal

As a preliminary matter, the Court addresses the parties' motions to seal certain exhibits filed in connection with this Motion to Dismiss **(#17, 66)**. Madison moves to seal Exhibit B to its Motion to Dismiss **(#17)**, which is a copy of the Shareholder Account Statement for an account with Pramerica Fund held by TD Ameritrade, Inc. as part of Mr. Gordon's IRA account. Mr. Gordon moves to seal Exhibits B, C, D, J, M and N to his Response **(#66)**, which are financial statements for the Funds (B, C, D), Fund profit calculations (J), another of Mr. Gordon's Shareholder Account Statements (M), and Madison's Compliance Manual (N). Both motions are unopposed, but the agreement of the parties is not determinative of whether

documents in the court's record should be sealed from public view.

In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978), the Supreme Court acknowledged a common-law right of access to judicial records premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (J. Kane). Accordingly, there is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be sealed. *See Nixon,* 435 U.S at 599. D.C. Colo. L. Civ. R. 7.2 requires a party seeking sealing of a document to show "compelling" reasons for doing so. Such a showing is required to ensure public confidence in the judicial process. It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814.

With the exception of Madison's Compliance Manual, the documents referenced have not been considered by the Court in determining Madison's Motion. Accordingly, there is no public right of access to the documents and the motions to seal **(#17, 66)** shall be **granted** to the extent they seek to seal Exhibit B to Madison's Motion **(#18)** and Exhibits B, C, D, J, and M to Mr. Gordon's Response **(#67, 67-1, 67-2, 67-3, 67-4)**. *See Riker v. Fed. Bureau of Prisons*, 315 Fed. App'x 752, 755 (10th Cir. Mar. 10, 2009) (unpublished).

6

However, Madison's Compliance Manual, filed as Exhibit N to Mr. Gordon's Response **(#67-5, 67-6)**, is relevant to the Court's analysis. Mr. Gordon makes no showing as to why interests favoring nondisclosure outweigh the public's right of access to judicial documents. Rather, he simply states that he is seeking to seal the financial documents because Madison requested that they be sealed. Madison did not respond to this motion to supplement Mr. Gordon's showing or make any further argument as to the interests supporting nondisclosure. Accordingly, no "compelling reason" has been provided favoring sealing. Accordingly, Mr. Gordon's Motion to Seal **(#66)** is **denied** as to Exhibit N.

### B. Mr. Gordon's Standing to Assert Counterclaims 5 and 6

Madison moves, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss Counterclaims 5 (theft) and 6 (aiding and abetting breach of fiduciary duty) for lack of jurisdiction because Mr. Gordon lacks standing to assert the counterclaims. Counterclaims 5 alleges that Madison stole from the Investment Funds and Counterclaim 6 alleges that Madison aided and abetted the Investment Managers in breaching the fiduciary duties they owed to the Investment Funds. Mr. Gordon asserts these claims in a derivative capacity as a shareholder of and on behalf of the Investment Funds.

Legal standing to assert a claim is necessary for exercise of subject matter jurisdiction. *See San Juan County v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007). Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can take one of two forms: (1) a party may facially attack the complaint's allegations as to the existence of subject matter jurisdiction; or (2) a party may challenge the factual basis on which the complaint asserts subject matter jurisdiction. *See Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003); *Holt v. United*

7

*States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Here, Madison does not challenge the adequacy of Mr. Gordon's jurisdictional allegations and, therefore, the Court does not engage in any analysis of their sufficiency. Instead, Madison challenges the factual/legal accuracy of the Mr. Gordon's assertion that he is a shareholder of the Investment Funds. In such circumstance, a court may not presume the truthfulness of the Counterclaim Complaint's factual allegations, but, in determination of the accuracy of the assertions, has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Sizova v. National Inst. of Standards and Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

In this case, the resolution of Mr. Gordon's standing to pursue claims on behalf of the Investment Funds rests upon determination of factual issues as to whether he holds an ownership interest in the Investment Funds, under what law the Investment Funds are organized and whether such law empowers him to assert rights on behalf of the Investment Funds. Although the parties have submitted affidavits and other evidence which they contend demonstrates their respective positions, there is a factual dispute that must be resolved. This dispute is intertwined with the other substantive factual disputes in the case including whether Mr. Gordon was terminated or voluntarily resigned and what rights he has in each circumstance. These issues are more properly determined after discovery is complete and all pertinent facts are presented to the Court either in motions brought pursuant to Rule 56 or at trial. Madison's Motion is therefore **denied with leave to renew** insofar as it challenges Mr. Gordon's standing to assert claims on behalf of the Investment Funds.

**C.     Rule 12(b)(6) Challenges to Counterclaims 1, 2, 7, and 8**

As to Counterclaims 1 (wrongful termination), 2 (breach of implied employment contract), 7 (extreme and outrageous conduct), and 8 (civil conspiracy), Madison moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The parties agree that Colorado law applies to each of these claims. Because the particular grounds on which Madison seeks dismissal vary with each claim, they will be delineated below.

There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6). *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

**1.     Counterclaim 1: Wrongful Termination**

Counterclaim 1 asserts that Mr. Gordon's termination was unlawful because it violated

public policy. Madison argues that Mr. Gordon's allegations are insufficient to demonstrate the existence of a public policy or that it ordered Mr. Gordon to perform an illegal act. Mr. Gordon responds that he has alleged that he was bound by the Accountancy Rules of Professional Conduct and that Madison thwarted his performance of his duties thereof.

Generally under Colorado law, employment is at-will and a discharged employee has no cause of action against an employer for termination. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666–67 (10th Cir. 1999). There are exceptions to this rule, however. Under the public policy exception, an employee may pursue a claim for wrongful discharge if he or she alleges that the discharge was based on (i) a refusal to engage in conduct that would violate public policy; or (ii) participation in conduct that is protected or encouraged by public policy. *See id.*; *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104–05 (Colo. 1992). To sustain a claim for wrongful termination in violation of public policy under Colorado law, a plaintiff must demonstrate that:

> (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*See Bonidy v. Vail Valley Ctr. For Aesthetic Dentistry, P.C.*, 186 P.3d 80, 83 (Colo. Ct. App. 2008) (internal citations and quotations omitted).

Madison contends that the Counterclaims fail to make a showing under *Bonidy's* elements 1 (whether the employer directed an illegal act or prohibited the performance of a duty) and 2 (whether the action directed or prohibited violates a public policy). For analytical purposes, the Court addresses *Bonidy's* element 2 first.

*Bonidy's* second element requires designation of a public duty that Mr. Gordon was compelled by Madison to violate. Mr. Gordon states that as an accountant, he was required by the Colorado State Board of Accountancy Rules of Professional Conduct, from making false or misleading entries in a company's financial statements or records and to report any material misrepresentation or misstatement to the appropriate individuals within the company. The Colorado Supreme Court has determined that rules of professional conduct, including specifically the Accountancy Rules of Professional Conduct, may establish the public policy for purposes of a wrongful discharge claim if the particular objective or directive serve the public interest and are sufficiently concrete. *See Rocky Mt. Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525–26 (Colo. 1996). Without determining whether Mr. Gordon was bound by such standards, or that they were infringed at Madison's direction, the Counterclaims sufficiently identify a public policy.

As to *Bonidy's* first element—whether Madison directed Mr. Gordon to perform and illegal act or prohibited him from performing a duty—Counterclaim 2 alleges that Mr. Gordon's position at Madison included accounting and preparation of tax returns for Madison, the Investment Funds, and the Investment Managers. It also alleges that Madison prevented Mr. Gordon's investigation into the allegedly unlawful financial activities by impliedly directing him to stop his investigation, physically obstructing his access to the relevant accounting records, and

ultimately terminating his employment in retaliation for his investigation. Under a Rule 12(b)(6) standard, these allegations are sufficient.[5] Accordingly, Madison's Motion is **denied** as to Counterclaim 1.

## 2. Counterclaim 2: Breach of Employment Contract

Mr. Gordon's second counterclaim alleges that his termination violated the provision in Madison's Compliance Manual stating that he would not be retaliated against for reporting the misconduct of other employees. Madison argues that this counterclaim must be dismissed because Mr. Gordon's employment was at will and (1) the provision cannot form the basis for a breach of contract claim because it does not include a *procedure* for termination; (2) Mr. Gordon's actions did not conform to the requirements of the provision because he did not report the misconduct to a compliance officer; and (3) Mr. Gordon's report was not made in good faith because he was still investigating at the time he reported the suspected misconduct. Mr. Gordon responds that the provision sufficiently addresses termination such that it can form an implied term in his employment contract and that his actions complied with the terms of the provision.

Under Colorado law, there are limited exceptions to the general rule that employment is generally at-will with no cause of action arising from termination of the employment relationship. One exception is that the provisions in an employee manual may impose restrictions or limitations on the employment relationship, notwithstanding the otherwise at-will nature of the relationship. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711–12 (Colo. 1987); *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 247 (Colo. Ct. App. 2006). The cause of

---

[5] Madison focuses only on whether Counterclaim Complaint alleges that it directed an illegal act; it does not address whether the Counterclaim Complaint adequately alleges that it prohibited Mr. Gordon's performance of a duty.

action may be maintained pursuant to a contract theory of liability, that is, that the employer's statements in the employee manual constituted an offer by the employer and that the employee accepted the offer. *See Soderlun v. Public Serv. Co.*, 944 P.2d 616, 619 (Colo. Ct. App. 1997). Alternatively, a promissory estoppel theory of liability may be used if the plaintiff can demonstrate that the employer should reasonably have expected the employee to consider the statements in an employee manual as a commitment by the employer, that the employee justifiably relied on the manual to his detriment, and that injustice can only be avoided by enforcement of the provisions in the manual. *See id.*; *Kuta v. Joint Dist. No. 50(j)*, 799 P.2d 379, 382 (Colo. 1990). Regardless of the theory under which the plaintiff proceeds, an employer's statement, such as in a manual, must be sufficiently specific such that the court is able to understand the nature of the obligation and enforce the terms. *See Soderlun*, 944 P.2d at 620–21.

In this case, Counterclaim 2 alleges that Madison's Compliance Manual obligated employees to report suspected misconduct to supervisors and assured them that they would not be retaliated against for doing so. In essence, Mr. Gordon alleges that there was no cause for his termination, or put another way, that he was wrongfully terminated in violation of Madison's express policy.

Madison is correct that this provision is not one that governs the *procedure* for termination. However, terms inferred by manuals are not limited to those regulating termination procedures. Although the exception to at-will employment most frequently arises based on termination procedures in an employee manual, a manual may also affect to the causes or reasons for discharge. *See De Rubis v. Broadmoor Hotel, Inc.*, 772 P.2d 681, 681 (Colo. Ct. App. 1989). For example, in *Tuttle v. ANR Freight Sys., Inc.*, the Colorado Court of Appeals

13

concluded that an employer's statement of its commitment to gender equality and that advancement and pay scale would be determined based on the responsibilities of the position and the employee's job performance could give rise to a wrongful discharge claim. Accordingly, even though the provision in Madison's Compliance Manual does not set forth a procedure, the provision regarding Madison's policy regarding reporting misconduct and retaliation therefor is sufficient to state a claim for wrongful discharge.[6]

Counterclaim 2 further alleges that Mr. Gordon engaged in conduct exposing the wrongdoing of Madison and that he was terminated in retaliation for this conduct, in direct violation of the Compliance Manual. Contrary to Madison's contention, the provision does not require that reports be made in a specific manner, it only provides examples of to whom reports may be made. Making all reasonable inferences in favor of Mr. Gordon, the allegation that Mr. Gordon exposed the wrongdoing of Madison is sufficient to allege Mr. Gordon's compliance with the policy. Additionally, although Mr. Gordon admits that he was still investigating the misconduct at the time he reported misconduct, there is nothing to indicate that his report was not made in good faith as required by the policy. Moreover, the provision does not require that misconduct be certain or definite, but contemplates that "concerns" are reported. Accordingly, Mr. Gordon's allegations are sufficient to allege that there was an employer statement or promise

---

[6] Madison's reliance on *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265, 267 (Colo. Ct. App. 1984), is misplaced. In *Corbin*, the plaintiff alleged that he was terminated for refusing to perform an act that was in violation of the employer's own safety manual. The Court affirmed the dismissal of the plaintiff's claim for breach of implied employment contract, determining that compliance with a safety manual is not sufficient to form an implied employment contract. In Mr. Gordon's case, however, the policy provision at issue is not merely a policy statement but includes an express statement regarding retaliation for complying with the provision, *i.e.*, it includes a limitation on the employer's right to terminate the employee. Accordingly, it is sufficient to form the basis for Mr. Gordon's wrongful discharge claim.

that he complied with but was terminated in violation of the statement. Thus, Madison's Motion as to Counterclaim 2 is **denied**.

### 3. Counterclaim 7: Extreme and Outrageous Conduct

Counterclaim 7 alleges that Madison's conduct was extreme and outrageous. In Colorado, extreme and outrageous conduct is actionable under the tort of intentional infliction of emotional distress. Madison argues that the allegations concerning this counterclaim do not sufficiently allege any conduct that rises to the level of being extreme and outrageous. Mr. Gordon responds by reasserting that Madison's actions were directed at him and that they were, in fact, extreme and outrageous.

In Colorado, an intentional infliction of emotional distress claim requires a showing that the defendant (i) intentionally or recklessly; (ii) engaged in extreme and outrageous conduct; (iii) that caused severe and emotional distress. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999); *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. Ct. App. 2009). For liability to attach, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Han Ye Lee*, 222 P.3d at 963.

Treating Madison's actions and its affiliates' actions as actions of Madison, the counterclaims allege that Madison wrongfully took funds from the Investment Funds, aided and abetted a breach of fiduciary duty by the Investment Managers, terminated Mr. Gordon in violation of public policy and an implied term in the employment contract, and breached its promises to pay certain compensation to Mr. Gordon. At this juncture, the Court is not in a position to assess whether these actions are extreme and outrageous. Determination of that issue

is properly reserved for a Rule 56 motion or trial. Accordingly, Madison's Motion is **denied** insofar as it seeks dismissal of Counterclaim 7.

### 4. Counterclaim 8: Civil Conspiracy

Counterclaim 8 alleges that Madison engaged in a civil conspiracy to accomplish an unlawful goal. Madison argues that Counterclaim 8 fails to allege any specific factual allegations as to the conspiracy claim, including another party to the alleged conspiracy, what the object of that conspiracy was, or what the unlawful overt act was. Madison also argues that the civil conspiracy claims must fail because dismissal is warranted on all the other counterclaims. Mr. Gordon does not address the substance of his civil conspiracy claim; rather only acknowledges that the civil conspiracy counterclaim is dependent on the survival of his other counterclaims.

Under Colorado law, a civil conspiracy claim requires allegations demonstrating 5 elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as a proximate result. *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Madison is correct that the Counterclaim Complaint does not allege any facts regarding an agreement between Madison and another individual or entity, the nature of the alleged agreement, or the unlawful overt act taken in furtherance of conspiracy. As such, counterclaim 8 is **dismissed**.[7]

---

[7] Normally, the Court affords a plaintiff an opportunity to amend the complaint to cure any pleading deficiencies. Here, however, Mr. Gordon's response brief has not requested the opportunity to amend should his pleading be found wanting nor has he suggested the existence of any other facts that could be pled to remedy the identified deficiency. Moreover, Madison represents that it offered Mr. Gordon the opportunity to amend prior to filing its motion, but he declined the offer. Additionally, the Scheduling Order's **(#29)** deadline for amendment of the pleadings expired April 4, 2010. Therefore, the Court declines to offer an opportunity to amend

16

**IT IS THEREFORE ORDERED** that

(1) Plaintiff Madison Services Company, LLC n/k/a M Capital Service, LLC's Motion to Seal **(#17)** is **GRANTED**. Exhibit B to Plaintiff's Motion to Dismiss **(#18)** shall remain sealed.

(2) Defendant Gordon's Motion to Seal **(#66)** is **GRANTED IN PART and DENIED IN PART**. Exhibits B, C, D, J, and M to Defendant's Response **(#67, 67-1, 67-2, 67-3, 67-4)** shall remain sealed. Exhibit N **(#67-5, 67-6)** shall be unsealed.

(3) Plaintiff Madison Services Company, LLC n/k/a M Capital Services, LLC's Partial Motion to Dismiss **(#16)** is **GRANTED IN PART and DENIED IN PART**, with leave to renew as to Counterclaims 5 and 6.

(4) Counterclaim 8 is **DISMISSED**. Counterclaims 1, 2, 3, 4, 5, 6, and 7 remain pending.

Dated this 2nd day of September, 2010

          **BY THE COURT:**

          *Marcia S. Krieger*

          Marcia S. Krieger
          United States District Judge

---

as to any deficiencies found in this Order.